IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| AHMAD CHALABI, *et al.*, | ) ) ) | |
| *Plaintiffs*, | ) ) | Civil Action No. 04-01353 (LFO) |
| v. | ) ) | |
| THE HASHEMITE KINGDOM OF JORDAN, *et al.*, | ) ) ) ) | |
| *Defendants*. | ) ) | |

**MEMORANDUM OPINION**

Currently pending is the Defendants' Motion to Dismiss the Complaint in its Entirety [dkt. #9]. The calendar committee of this court transferred this motion to the undersigned for resolution. For the reasons stated below, that motion is GRANTED.

**I. BACKGROUND**

A. Plaintiff's Claims

Plaintiff Ahmad Chalabi is a citizen of the Republic of Iraq. Compl. ¶ 14. He moved to Jordan in 1977. ¶ 25. In 1997, he founded Petra Bank, "a bank organized under the laws of the Hashemite Kingdom of Jordan, having its principal place of business in Amman, Jordan." ¶ 15. Chalabi was Petra Bank's General Manager and Chairman of its Board of Directors until 1989, when it was taken over by the Defendants. Chalabi left Jordan in 1989 and returned to Iraq.

By 1989, Petra Bank had become the second largest bank in Jordan, with capital of approximately 30 million Jordanian Dinars, then approximately $90 million. ¶ 26. Petra

International Banking Corp. ("PIBC") is Petra Bank's 70-percent-owned Washington, D.C., subsidiary, which it founded to gain further access to international corporate customers. Petra Bank maintained a residence within the District of Columbia, which was used by bank employees who made business trips to the United States on a daily basis to collect upon the checks deposited in Petra Bank. The volume of this activity in the U.S. was approximately $12 million daily. Petra Bank also opened and confirmed letters of credit through several American banks in amounts as great as $40 million daily. ¶ 27.

The Defendants are the Hashemite Kingdom of Jordan, which the Complaint concedes is a sovereign state, ¶ 8; the Central Bank of Jordan, "an agency or instrumentality of Jordan . . . charged with the regulation and oversight of the business of banking in Jordan," ¶ 19; Muhammed Saeed El-Nabulsi, the former Governor of the Central Bank being sued in his official capacity, ¶¶ 8, 20; and Mudhar Badran, the former Prime Minister of Jordan, also being sued in his official capacity, ¶¶ 8, 21. The Complaint expressly acknowledges that "all the defendants are foreign states" within the meaning of the United States Foreign Sovereign Immunities Act. ¶ 8.

In sum, the Complaint accuses the Defendants of taking money from Petra Bank, falsely making the bank appear insolvent, seizing it unlawfully, falsely charging Chalabi with embezzlement, ruining his reputation in the diplomatic community, and continuing to loot both the banks' remaining assets. It alleges that Jordan convicted Mr. Chalabi as a punishment for his opposition to Mr. Hussein and fear that he would disclose information about illegal Jordanian arms sales to Iraq: "In retaliation for Ahmad Chalabi's tireless efforts to unseat Saddam Hussein from power in Iraq . . . defendants combined and conspired to destroy Ahmad Chalabi in his

business and property and his influence, and thus his ability to continue with his efforts against Saddam Hussein and Jordan's complicity with him." ¶ 2.

Chalabi alleges several specific retaliatory actions. In August 1989, the Central Bank of Jordan announced that it had discovered financial fraud at Petra Bank. Acting under its regulatory authority, it seized and liquidated Petra Bank, and placed it in receivership. Chalabi argues that these actions were based on the allegedly "false pretense" that the bank was in serious financial trouble. ¶ 2. Based on the "contrived Bank failure," Jordan issued an order for Chalabi's detention. Chalabi asserts that this detention order was part of an unsuccessful "plot to have him kidnaped by members of the Iraqi Mukhabarat (Saddam's notorious intelligence agency)." ¶ 3. Jordan filed allegedly "false embezzlement charges against Chalabi in Jordan's military courts," leading to a "sham trial." Chalabi was convicted of embezzlement and sentenced in absentia to 22 years in prison. ¶4. Chalabi asserts that this conviction prevented him from returning to Jordan and timely discovering the extent to which the Defendants were perpetrating fraud on the banks.

Chalabi further asserts that the defendant "continued the activities of Petra Bank in the United States . . . but . . . did so in a fraudulent manner not calculated to protect and preserve the Bank, but, rather, to loot it and to gain money for themselves and others under false and fraudulent pretenses, while blaming Chalabi for its losses." ¶49. The Complaint also alleges that the Defendants took certain actions in connection with the seizure and liquidation of Petra Bank that "ultimately" caused the ruination of the Banks, resulting in the loss of 30 jobs in the District of Columbia. ¶¶ 2, 55, 66. Chalabi also alleges that these actions "caused the disruption or cessation of hundreds of millions of dollars worth of banking activity involving both Petra Bank

and PIBC throughout the United States, including bank deposits, bank letters of credit, bank confirmation letters of credit, bank acceptances, bank loans, bank loan guarantees, and VISA and travelers' check payments." ¶10.  In particular, Chalabi alleges that the defendants established a sham "Liquidation Committee," which brought a lawsuit in the United States "to ensure that [the Banks'] U.S. assets were transferred to the control of the Liquidation Committee in Jordan." ¶ 67; *In re Hourani*, 180 B.R. 58 (Bankr. S.D.N.Y. 1995).  Finally, the Complaint alleges that Defendants have used U.S. mails and wires "to disseminate [Chalabi's] conviction."  It also alleges that, "[m]ore recently," in diplomatic communications, the Kingdom requested the U.S. Government's assistance in extraditing Chalabi to Jordan and falsely implicated Chalabi in leaking sensitive U.S. intelligence information to Iran, "which caused the United States to order a destructive and damaging raid on Chalabi's home and offices in Bagdad." ¶¶ 6, 77, 78.

Based the on the foregoing allegations, Chalabi invokes the Racketeer Influenced and Corrupt Organizations Act ("RICO"), §18 U.S.C. 1961 et seq., (Count I); common law fraud (Count II); conversion (Count III); interference with contract rights (Counts IV, V, VIII); and interference with prospective economic advantages (Counts VI, VII, IX).  Counts V, VIII, VII and IX are derivative claims on behalf of Petra Bank and PIBC .[1]

B. <u>Defendants' Motion to Dismiss</u>

All Defendants filed a motion to dismiss for lack of jurisdiction under Rules 12(b)(1) and (2) of the Federal Rules of Civil Procedure.  In the alternative, they move for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, for three reasons:  (1) the Act of State

---

[1] Chalabi avers that he owns 11% of the shares of Petra Bank and 30% of the shares of the U.S. subsidiary, and that demand would be futile.  ¶ 14.

Doctrine renders Chalabi's claims non-justiciable, (2) the claims are barred by the statute of limitations; and (3) the derivative claims on behalf of Petra Bank are barred because Chalabi has not met the requirements of Federal Rule of Civil Procedure 23.1.

## II. DISCUSSION

### A. Jurisdiction

Defendants argue that all the claims are barred under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602-1611 (the "Act"), because all of the Defendants are "foreign states" presumptively immune from jurisdiction, and none of the Act's exceptions to immunity applies. The Act is the "sole basis for obtaining jurisdiction over a foreign state" in United States courts. *Permanent Mission of India to the United Nations v. City of New York*, 127 S. Ct. 2352, 2354 (Jun. 14, 2007) (quoting *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 439 (1989)). It defines sovereigns to include "an agency or instrumentality of a foreign state." 28 U.S.C. § 1603(a). Individuals can also qualify as an "agency or instrumentality" when acting in an official capacity. As indicated, Chalabi concedes that all the Defendants are sovereigns for purposes of this case.

The Act provides that sovereigns are "presumptively immune" from suit unless one of the exceptions outlined in the Act applies. The exceptions at issue in this case are: (1) waiver, 28 U.S.C. § 1605(a)(1); (2) commercial activity, 28 U.S.C. § 1605(a)(2); and (3) expropriation, 28 U.S.C. § 1605(a)(3). When a defendant moves to dismiss on the basis of foreign sovereign immunity, a district court should make the "critical preliminary determination of its own jurisdiction as early in the litigation as possible." *Phoenix Consulting, Inc. v. Angola*, 216 F.3d 36, 39 (D.C. Cir. 2000); *Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123,

1127 (D.C. Cir. 2004).   Where, as here, the defendants do not dispute the factual allegations, the court must "take the [appellants'] factual allegations as true and determine whether they bring the case within any of the exceptions to immunity invoked by the [appellants]." *Nemariam v. Federal Democratic Republic of Ethiopia*, 491 F.3d 470, 475 (D.C. Cir. 2007) (quoting *Phoenix Consulting*, 216 F.3d at 40.)[2]

Chalabi's first argument is that Defendants' activities fall under the commercial activity exception.  That exception confers jurisdiction over a sovereign in a claim arising from "commercial activity" that satisfies one of three jurisdictional nexus requirements:

(1) "upon a commercial activity carried on in the United States by the foreign state";

(2) "upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or

(3) "upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States."

28 U.S.C. § 1605(a)(2).   The Act defines "commercial activity" to include (1) "a regular course of commercial conduct" or (2) "a particular commercial transaction or act" and states that "[t]he commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." 28 U.S.C. § 1603(d).

Here, Chalabi alleges that Defendants' activities qualify as commercial because they continued to operate Petra Bank commercially in the United States.  Specifically, the complaint asserts:

---

[2] Defendants challenge appellant's characterization of the *reasons for* and *nature of* their actions, but do not argue that the underlying acts alleged did not occur.

> Commencing on and after the seizure of Petra Bank on August 3, 1989, defendants . . . assumed control over Petra Bank's day-to-day operations to the same extent as had the private individuals who had operated the Bank before its takeover by defendants, performing all the day to day operations of Petra Bank . . . [and] continued the activities of Petra Bank in the United States, ... but ... did so in a fraudulent manner not calculated to protect and preserve the bank, but rather, to loot it and to gain money for themselves and others under false and fraudulent pretenses. ¶48-49.

Essentially, the question is whether the ongoing banking activity alleged in the complaint was limited to activity related to the liquidation proceeding after a sovereign regulatory act, or whether the Defendants crossed the line and began to act "not as regulator of a market, but in the manner of a private player within it." *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 617 (1992). Defendants' vigorously argue that any commercial activity that occurred was related to its exercise of sovereign regulatory authority, but the complaint alleges otherwise.

In addition, the Supreme Court has made it clear that the sovereign's motive for the commercial activity may not be considered: "it is irrelevant *why* [a sovereign] participated in [a commercial market] in the manner of a private actor; it matters only that it did so." *Id.*, 504 U.S. at 617 (emphasis in original). As our Court of Appeals recently noted, "in practice [this standard] means rejecting any argument that rests on the foreign state's *reasons* for undertaking the activity alleged to be commercial." *El-Hadad v. United Arab Emirates*, --- F.3d ----, No. 06-7075, 2007 WL 2141943, at *14 (D.C. Cir. Jul. 27, 2007) (emphasis in original).

In *Saudi Arabia v. Nelson*, 507 U.S. 349 (1993), the Supreme Court held that the commercial activity exception requires that the "tortious conduct itself" must qualify as "commercial activity"; the commercial activity that forms the basis for jurisdiction must also serve as the predicate for the substantive cause of action. 507 U.S. at 357-58. Defendants argue that the "gravamen" of the complaint is the regulatory takeover of the bank in Jordan, which was

7

a quintessentially sovereign act. However, the complaint alleges that the ongoing banking activity is as much a predicate act for plaintiffs' claims of conversion, interference, and fraud as the initial takeover. Even though nationalization of a bank may be a considered a sovereign act entitled to immunity, activity after nationalization that is not "strictly necessary to consummate [an] acquisition" can be considered commercial. *Baglab Ltd. v. Johnson Matthey Bankers Ltd.*, 665 F. Supp. 289, 294 (S.D.N.Y. 1987). Defendants also point out that a sovereign's acts after an expropriation do not necessarily transform an expropriation into commercial activity. *See generally Rong v. Liaoning Province Gov't*, 452 F.3d 883, 888-91 (D.C. Cir. 2006). However, the *Rong* case is distinguishable from the case at bar because it only involved actions taken in the foreign country. *Id.* at 889. Here, the complaint alleges ongoing commercial participation in the United States banking market beyond that "strictly necessary" to complete the takeover and based on ongoing banking activity that took place *in the United States*. ¶¶ 10, 27, 49, 55. Finally, as an additional jurisdictional nexus, the complaint also asserts that Defendants' mismanagement of Petra Bank in Jordan caused a direct effect in the United States: the disruption or repudiation of "hundreds of millions" of banking transactions with customers in the United States, the collapse of PIBC (the U.S. subsidiary), and the loss of 30 jobs in the District of Columbia. ¶10.

Thus, accepting the factual allegations as true, the complaint asserts facts sufficient to confer subject matter and personal jurisdiction over the Defendants under the commercial activity exception to the Act.

Because I find that the commercial activity exception confers jurisdiction, it is not necessary to address the remaining exceptions invoked by Chalabi.

It is well-settled that jurisdiction is a threshold issue; if "a court can readily determine that it lacks jurisdiction over the cause or the defendant, the proper course would be to dismiss on that ground." *Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.,* 127 S. Ct. 1184, 1194 (2007).  In this case, before proceeding to the merits, I would be inclined to order the parties to conduct jurisdictional discovery to conclusively determine whether the ongoing commercial activity alleged by Chalabi was, in fact, beyond the scope of activity related to the liquidation attendant to a purely regulatory action.  However, the Supreme Court recently clarified that "a federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits.'" *Sinochem,* 127 S. Ct at 1191 (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999) and *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83,100-101, n.3 (1998)).  Where, as here, the issue of jurisdiction could be an "arduous" one, and it is clear that the case can be disposed of on a non-merits ground, it serves the interests of judicial economy to do so.

As explained below, all the claims are clearly barred by the relevant statutes of limitations; accordingly, further jurisdictional discovery would be futile.

B. <u>Statute of Limitations</u>

The act that forms the heart of the complaint, the takeover and seizure of Petra Bank and PIBC, occurred in the summer of 1989.  ¶ 12.  The statute of limitations for a civil conspiracy claim under RICO is four years and accrues upon discovery.  *Rotella v. Wood*, 528 U.S. 549, 555 (2000); *Riddell v. Riddell Washington Corp.*, 866 F.2d 1480, 1489-90 (D.C. Cir. 1989).  The applicable statute of limitations for the tort claims is determined by the law of the forum, in this case, the District of Columbia.  *See Gilson v. Republic of Ireland*, 682 F.2d 1022, 1025 n.7,

1026-28 (D.C. Cir. 1982). The District of Columbia statute of limitations, D.C. Code § 12-301(8) (2001), applies a three-year limitations period where, as here, "a limitation is not otherwise specially prescribed" for the type of claim.

Under the discovery rule, "a cause of action accrues when the plaintiff has knowledge of (or by the exercise of reasonable diligence should have knowledge of) (1) the existence of the injury, (2) its cause in fact, and (3) *some* evidence of wrongdoing." *Goldman v. Bequai*, 19 F.3d 666, 671-72 (D.C. Cir. 1994) (emphasis added); *see also Riddell*, 866 F.2d at 1490. In this case, the complaint makes clear that Chalabi was aware of the seizure of Petra Bank and the installation of the new Management Committee in August of 1989. ¶¶ 2, 21, 26, 38-45, 48-50. It also asserts that Chalabi fled Jordan soon thereafter when he learned about Defendants' alleged conspiracy. ¶¶ 3, 46-47. Thus, "from the face of the complaint, there can be no doubt that [Chalabi] had either actual or inquiry notice of defendants' alleged pattern of fraudulent activity" in 1989. *Solano v. Delmed, Inc.*, 759 F. Supp. 847, 853 (D.D.C. 1991). This complaint was not filed until August 11, 2004, nearly fifteen years later.

Chalabi responds that his exile from Jordan and inability to return to Iraq prevented him from discovering the scope and extent of the fraud, as well as its ongoing nature. However, when a cause of action accrues upon plaintiff's discovery of his injury, "[i]t is inconsequential that he did not then know the full extent or duration of the injury." *See Wiggins v. State Farm Fire & Cas. Co.*, 153 F. Supp. 2d 16, 21 (D.D.C. 2001) (citing *Fitzgerald v. Seamans*, 553 F.2d 220, 227 (D.C. Cir. 1977)).

Because all claims are barred by the statute of limitations, the remaining arguments for dismissal need not be addressed.

### III.   CONCLUSION

For the foregoing reasons, this action is DISMISSED with prejudice.


Dated:  August 27, 2007                              /s/

                                             Louis F. Oberdorfer

                                             UNITED STATES DISTRICT JUDGE